UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **Willie Moses Anderson**, #170797, ) | C/A No. 4:06-3338-GRA-TER |
| *aka Willie M. Anderson,* ) | |
|                       Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Report and Recommendation |
| State of South Carolina; ) | |
| Mildred Billups, witness; ) | |
| Tony Billups, witness; ) | |
| Gary Richburg, witness; ) | |
| Caroline Frierson, victim; ) | |
| Doug Rideway, law enforcement; ) | |
| Harold Detwiler, Attorney; ) | |
| Buelah Roberts, Clerk of Court; ) | |
| Fred Brown, law enforcement; ) | |
| Manning Police Department; ) | |
| Manning (Clarendon) County; ) | |
| Joe Bradham, law enforcement; ) | |
| Margaret T. Sullivan, Court Reporter; ) | |
| Barbara M. Tiffin, Solicitor; ) | |
| Judge Anthony Harris; ) | |
| John C. Land, IV, attorney; ) | |
| D. McKenzie, grand jury member; ) | |
| Doug H. McFadden, grand jury member; ) | |
| R. Farrell Cothron, Jr.; ) | |
| Joe Wike; ) | |
| NFH Kolb, Jr. ; ) | |
| Dorothy D. Stewart; ) | |
| and ) | |
| Thomas Cooper, Attorney, ) | |
|                       Defendants. ) | |

This is a civil rights action filed *pro se* by a state prison inmate.[1] Plaintiff is currently

---

[1] Pursuant to 28 U.S.C. §636(b)(1), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in such *pro se* cases and to submit findings and recommendations to the District Court. *See also* 28 U.S.C. § § 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

incarcerated at Evans Correctional Institution, serving sentences entered in 1990 following his convictions for robbery, assault and battery with intent to kill, and possession of a weapon during a crime. This Court recently rejected Plaintiff's § 2254 Petition for Writ of Habeas Corpus directed to these same convictions. *See* Anderson v. McMaster, Civil Action No. 4:05-2661-GRA. Plaintiff did not seek to appeal that ruling.

In the case under consideration in this Report, Plaintiff seeks compensatory damages from many individuals and entities who were involved in one way or another with his 1989 arrest and subsequent trial that resulted in the convictions and sentences he is now serving. Primarily, he claims that the witnesses against him lied, that the law enforcement officials arrested him without probable cause and defamed him by putting him in jail, and that the Solicitor, judge, court clerk, and his defense counsel all discriminated against him and/or failed to perform their professional duties in ways that resulted in his convictions and sentences. Additionally, an excessive force claim against one Defendant, Fred Brown, arising from an apparently un-connected 1988 arrest is nearly hidden within his voluminous allegations about the 1989 arrest and the 1990 robbery, ABWIK, weapons trial.

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's *pro se* Complaint filed in this case. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. §§ 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke v. Williams, 490 U.S. 319, 324-25 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House of Correction, 64 F.3d 951 (4th Cir. 1995)(*en banc*); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); Boyce v. Alizaduh, 595 F.2d 948 (4th Cir. 1979).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9-10 & n.7 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. Fine v. City of New York, 529 F.2d 70, 74 (2d Cir. 1975). Nevertheless, the requirement of liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387(4th Cir. 1990). Even under this less stringent standard, however, the Complaint filed in this case is subject to summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B).

Initially, Plaintiff's constitutional claims against all Defendants, except Defendant Fred Brown, which all arise from his 1998 arrest and 1990 conviction for robbery, ABWIK, and weapons possession are premature since Plaintiff has not yet been successful in his attempts to overturn his convictions and sentences through appeal, post-conviction relief (PCR), habeas corpus, or otherwise.[2] With respect to actions filed pursuant to 42 U.S.C. § 1983 such as the present one alleging constitutional violations and/or other improprieties in connection with state criminal

---

[2] Plaintiff attempts to state claims for "defamation" against many of the Defendants based on their participation in his criminal case; however, such claims are state-law based claims which are not cognizable in this federal court in absence of diversity jurisdiction. See Cianbro Corp. v. Jeffcoat & Martin, 804 F. Supp. 784, 788-91 (D.S.C. 1992). Since it appears that Plaintiff and all Defendants are South Carolina residents, there is no basis for the exercise of diversity jurisdiction in this case. See M & I Heat Transfer Prods., Ltd. v. Willke, 131 F.Supp.2d 256, 260 (D. Mass. 2001). Accordingly, to the extent that Plaintiff's complaint alleges defamation, malicious prosecution, negligence, or any other state-law based claim against any Defendant, it is subject to summary dismissal.

charges,[3] the United States Supreme Court has written:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm whose unlawfulness would render a conviction or sentence invalid, . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); *see also* Ballenger v. Owens, 352 F.3d 842 (4th Cir. 2003)(Heck generally applies where search and seizure issues are raised);[4] Woods v. Candela, 47 F.3d 545 (2d Cir.1995)(plaintiff's conviction reversed by state court in 1993; hence, civil rights action timely filed); Treece v. Village of Naperville, 903 F. Supp. 1251 (N.D. Ill. 1995); Seaton v. Kato, 1995 WL 88956 (N.D. Ill., February 28, 1995); Smith v. Holtz, 879 F. Supp. 435 (M.D. Pa. 1995). By the above statements, the United States Supreme Court ruled that until a criminal conviction is set aside by way of appeal, PCR, habeas, or otherwise, any civil rights action based

---

[3]Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. See Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). The purpose of section 1983 is to deter state actors from using badge of their authority to deprive individuals of their *federally guaranteed* rights and to provide relief to victims if such deterrence fails. See McKnight v. Rees, 88 F.3d 417(6th Cir. 1996)(emphasis added).

[4]*See also* Booker v. Kelly , 888 F. Supp. 869 (N.D. Ill. 1995); Perkins v. Orr, No. 9:04-835-08, 2004 WL 3217867, *3+ (D.S.C. Jul 01, 2004) (unpublished opinion).

on the conviction and related matters will be barred. Even though Plaintiff's claims are currently barred, the limitations period for any civil rights action based on his convictions and sentences will not begin to run until the cause of action accrues, *i.e*, until the convictions and sentences are overturned; therefore, a potential § 1983 plaintiff does not have to worry about the running of the statute of limitations while he or she is taking appropriate steps to have a conviction overturned. *See* Benson v. New Jersey State Parole Board, 947 F. Supp. 827, 830 & n. 3 (D. N.J. 1996)(following Heck v. Humphrey and applying it to probation and parole revocations "[b]ecause a prisoner's § 1983 cause of action will not have arisen, there need be no concern that it might be barred by the relevant statute of limitations."); Snyder v. City of Alexandria, 870 F. Supp. 672, 685-88 (E.D. Va. 1994). Since Plaintiff has not been successful in his attempts to have his robbery, ABWIK, and weapons conviction set aside and since his claims of lying witnesses, lack of probable cause and discrimination necessarily imply the invalidity of his convictions, *see* Wallace v. City of Chicago, 440 F.3d 421 (7th Cir. 2006), *cert. granted*, --- U.S. ----, 126 S.Ct. 2891, 165 L.Ed.2d 915 (2006), he cannot sue any of the Defendants because of their involvement in his arrest and ultimate conviction. As a result, since all of Plaintiff's claims against all Defendants except Fred Brown are based solely on the role each such Defendant played in connection with Plaintiff's criminal case, all of these claims and these Defendants should be summarily dismissed from this case without issuance of service of process.

With regard to Plaintiff's excessive force claim against Defendant Brown arising from an unconnected 1988 arrest, it appears from the face of Plaintiff's pleading that this claim is subject to summary dismissal due to the running of the applicable statute of limitations. Giving Plaintiff the full benefit of available inferences, the applicable statute of limitations on any § 1983 claim

Plaintiff might have had a result of his 1988 arrest ran three years later in May 1991. In civil rights cases filed in the District of South Carolina, this Court must apply South Carolina's general personal injury statute of limitations. Wilson v. Garcia, 471 U.S. 261, 265-280 (1985)(in § 1983 actions, federal courts should apply a state's general statute of limitations for personal injuries). South Carolina's applicable personal injury statute of limitations establishes a three-year limitations period for personal injury (and, thus, § 1983) causes of action arising on or after April 5, 1988. S.C. Code Ann. § 15-3-530. Under Rule 8(c) of the Federal Rules of Civil Procedure, a statute of limitations defense is an affirmative defense, which is subject to waiver if not timely raised in a responsive pleading. *See*, *e.g.*, United States v. Ward, 618 F. Supp. 884, 901 (E.D. N.C. 1985); American National Bank v. Federal Deposit Insurance Corporation, 710 F.2d 1528, 1537 (11th Cir. 1983). Even so, the holding in Todd v. Baskerville, 712 F.2d 70, 74 (4th Cir. 1983), authorizes a district court to anticipate clearly apparent affirmative defenses available to Defendants in determining under § 1915 whether process should be issued against Defendants. Rogers v. Isom, 709 F. Supp. 115, 117 (E.D. Va. 1989)("A determination of frivolousness on the basis of affirmative defenses is appropriate even though no responsive pleadings have been filed."), *citing* Todd v. Baskerville; and Duncan v. West Virginia, 597 F. Supp. 1195, 1196 (S.D. W.Va. 1984)("Although some of the matters discussed constitute affirmative defenses, . . . where the complaint on its face raises obvious and complete affirmative defenses, the Court may consider these defenses in ruling under 28 U.S.C. § 1915(d) finding [sic] a complaint frivolous.").

The United States Court of Appeals for the Fifth Circuit has commented on the purpose and effect of statutes of limitations as follows,

> Limitations statutes, however, are not cadenced to paper tidiness and litigant

convenience. Time dulls memories, evidence and testimony become unavailable, and death ultimately comes to the assertions of rights as it does to all things human.

United States v. Newman, 405 F.2d 189, 200 (5th Cir. 1969)(citation omitted).

Accordingly, since is clear from the face of his Complaint that the applicable statute of limitations has run on any § 1983 federal claim Plaintiff might have had arising from the May 1988 arrest and since the excessive force allegations are the only allegations in the Complaint against Defendant Brown, this case should be summarily dismissed with issuance of process for Defendant Fred Brown.

Furthermore, even if Heck v. Humphrey and the running of the statute of limitations did not require summary dismissal of this case as to all Defendants, there are several other bases upon which the case is subject to summary dismissal as to most of the remaining Defendants. For example, Defendants Mildred Billups, Tony Billups, Gary Richburg, Caroline Frierson, Doug Rideway, and Joe Badham, who testified against Plaintiff at various stages of his robbery, ABWIK, and weapons possession criminal case, cannot be sued under 42 U.S.C. § 1983 for their providing testimony against Plaintiff. A rule of absolute witness immunity has been adopted by the majority of Courts of Appeals. *See* Brawer v. Horowitz, 535 F.2d 830, 836-37 (3d Cir. 1976) (lay witness in federal court; Bivens action); Burke v. Miller, 580 F.2d 108 (4th Cir. 1978) (state medical examiner; § 1983 action); Charles v. Wade, 665 F.2d 661 (5th Cir. 1982) (police officer witness; § 1983 suit); Myers v. Bull, 599 F.2d 863, 866 (8th Cir. 1979) (police officer witness; § 1983 suit); Blevins v. Ford, 572 F.2d 1336 (9th Cir. 1978) (private witnesses and former assistant U.S. attorney; action under §1983 and the Fifth Amendment). Since the United States Supreme Court's decision in Briscoe v. LaHue, 460 U.S. 325 (1983), most circuits have rejected § 1983 claims alleging that

the defendants who were testifying witnesses were not entitled to absolute immunity because they were engaged in a conspiracy with each other or with the prosecutor to offer perjurious testimony in a criminal case against the plaintiff. *See* Franklin v. Terr, 201 F.3d 1098, 1101-02 (9th Cir. 2000) (involving allegation of conspiracy between two testifying witnesses); Hunt v. Bennett, 17 F.3d 1263, 1267-68 (10th Cir. 1994) (holding prosecutor and police officer witness absolutely immune from claim of conspiracy to present false testimony); Snelling v. Westhoff, 972 F.2d 199, 200 (8th Cir. 1992) (per curiam) (rejecting conspiracy claim and pointing out that plaintiff's conspiracy allegations were "conclusory"); McArdle v. Tronetti, 961 F.2d 1083, 1085-86 (3d Cir. 1992) (involving testifying witnesses); House v. Belford, 956 F.2d 711, 720-21 (7th Cir. 1992) (rejecting claim of conspiracy between prosecutor and testifying witness on ground of absolute immunity); Miller v. Glanz, 948 F.2d 1562, 1570-71 (10th Cir. 1991) (rejecting claim for conspiracy among testifying witnesses); Alioto v. City of Shively, 835 F.2d 1173, 1174 & n. 1 (6th Cir. 1987) (same). As a result, the claims against the testifying witnesses are subject to dismissal under an immunity theory.

Additionally, Plaintiff's claim against Judge Harris is subject to summary dismissal under the doctrine of judicial immunity since the claims are based only upon the actions taken by the Judge in connection with his judicial duties. *See* Mireles v. Waco, 502 U.S. 9 (1991); Stump v. Sparkman, 435 U.S. 349, 351-64 (1978); Pressly v. Gregory, 831 F.2d 514, 517 (4th Cir. 1987) (a suit by South Carolina inmate against two Virginia magistrates); Chu v. Griffith, 771 F.2d 79, 81 (4th Cir. 1985) ("It has long been settled that a judge is absolutely immune from a claim for damages arising out of his judicial actions."); *see also* Siegert v. Gilley, 500 U.S. 226 (1991) (immunity presents a threshold question which should be resolved before discovery is even

allowed); Burns v. Reed, 500 U.S. 478 (1991) (safeguards built into the judicial system tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)(absolute immunity "is an immunity from suit rather than a mere defense to liability").  His claim against Defendant Barbara M. Tiffin, who served as a county Solicitor or Assistant Solicitor in connection with Plaintiff's criminal case, is barred by the doctrine of prosecutorial immunity.  In South Carolina, regional prosecutors are called Solicitors and Assistant Solicitors.  See S.C. Const., art. V, § 24; S.C. Code Ann, § 1-7-310.  Solicitors are elected by voters of a judicial circuit and have absolute immunity for activities in or connected with judicial proceedings, such as a criminal trial, bond hearings, grand jury proceedings, pre-trial "motions" hearings, and ancillary civil proceedings.  See Buckley v. Fitzsimmons, 509 U.S. 259 (1993); Burns v. Reed, 500 U.S. 478 (1991); Hart v. Jefferson County, 1995 WL 399619 (D.Ore., June 15, 1995)(allegations by plaintiff of malicious motives on part of two prosecutors insufficient to overcome prosecutorial immunity). Of particular importance in this case is the fact that it is well settled in this circuit that prosecutors are absolutely immune from liability for damages based on their decisions about "whether and when to prosecute," Lyles v. Sparks, 79 F. 3d 372, 377(4th Cir. 1996), and whether or not to go forward with a prosecution.  See Springmen v. Williams, 122 F. 3d 211, 212-13 (4th Cir. 1997).   Boiled down to its essence, this is all Plaintiff complains about: that Ms. Tiffin went forward with the prosecution of Plaintiff's criminal case using the evidence and testimony provided by the law enforcement Defendants.  Such decisions are purely prosecutorial functions and they are absolutely immune from Plaintiff's claims of constitutional violations.  Plaintiff's claims against Defendant Buelah Roberts, Clarendon County Clerk of Court, is barred by the doctrine of quasi-judicial immunity.  Clerks of Court, though elected by the voters

of a county, are also part of the State of South Carolina's unified judicial system. *See* S.C. Const. Article V, § 24; S.C. Code Ann. §§ 14-1-40;14-17-10. Ms. Roberts has quasi-judicial immunity because Plaintiff's allegations are based solely on the manner in which she performed her official duties. In doing so, she was following rules of a Court, or was acting pursuant to authority delegated by a court to Clerk's Office personnel, and, thus, her actions fell within the scope of quasi-judicial immunity. *See* Cook v. Smith, 812 F. Supp. 561, 562(E.D. Pa. 1993); Mourat v. Common Pleas Court of Lehigh County, 515 F. Supp. 1074, 1076 (E.D. Pa. 1981). The doctrine of absolute quasi-judicial immunity has been adopted and made applicable to court support personnel because of "the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts[.]'" Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992), *quoting* Scruggs v. Moellering, 870 F.2d 376, 377 (7th Cir. 1989); *see also* Ashbrook v. Hoffman, 617 F.2d 474, 476 (7th Cir. 1980)(collecting cases on immunity of court support personnel). This same doctrine of absolute immunity covers Plaintiff's claims against any grand jury members such as Defendants McKenzie and McFadden and require that they be summarily dismissed. *See* DeCamp v. Douglas County Franklin Grand Jury, 978 F.2d 1047, 1050-51 (8th Cir. 1992).

Also, Plaintiff's claims against his own defense attorneys, Defendant Land, Cooper, and Detwiler, are not valid § 1983 claims either, regardless of the quality of representation they provided to Plaintiff, because these attorneys did not act under color of state law during their representation. In order to state a cause of action under § 1983, a plaintiff must allege that: *(1)* the defendant(s) deprived him or her of a federal right, and *(2)* did so under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The United States Supreme Court has determined that "a

public defender does not qualify as a state actor when engaged in his general representation of a criminal defendant." Georgia v. McCollum, 505 U.S. 42, 53 (1992).[5] The Court held in Polk County v. Dodson, 454 U.S. 312 (1981), that the adversarial relationship of a public defender with the State prevented the attorney's public employment from alone being sufficient to support a finding of state action. Since Plaintiff's allegations do not establish these Defendants acted under color of state law, Plaintiff cannot maintain a § 1983 action against them. Plaintiff has alleged herein no more than malpractice; a § 1983 action may not be based alone on a violation of state law or on a state tort. Clark v. Link, 855 F.2d 156, 161 (4th Cir. 1988); *see* West v. Atkins, 487 U.S. 42, 48 (1988) (to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States); Kendall v. City of Chesapeake, 174 F.3d 437 (4th Cir. 1999) (same). If Plaintiff wishes to sue his attorneys for malpractice, he must do so in state, not federal, court since there is no basis for the exercise of federal diversity jurisdiction in this case. *See* supra note 2.

   Finally, Plaintiff's claim against Clarendon County, improperly called "Manning County" by Plaintiff – which appears to be based on Plaintiff's broad contention that the entire prosecution and trial of his robbery, ABWIK, and weapon possession criminal case in the courts of that county violated his constitutional rights -- is not a valid § 1983 claim. Clarendon County cannot be held responsible for actions taken by the Court of General Sessions (Circuit Court) and/or the Court of Common Pleas for Clarendon County. It can be judicially noticed that, in South Carolina, a county's authority over courts within its boundaries was abolished when Article V of the

---

[5] In Lugar v. Edmondson Oil Co., 457 U.S. 922, 929 (1982), the Court held that the statutory requirement of action "under color of state law" is identical to the "state action" requirement for other constitutional claims.

Constitution of the State of South Carolina was ratified in 1973. *See* Act No. 58, 1973 S.C. Acts 161; *see also* S.C. Const. Art. V, § 1; State ex rel. McLeod v. Civil and Criminal Court of Horry County, 265 S.C. 114, 217 S.E.2d 23, 24 (1975).[6] Under the current version of Article V, Section 1, the Supreme Court of South Carolina, not Clarendon County, retains the *sole* authority to supervise the Clarendon County courts. *See* Spartanburg County Dept. of Social Services v. Padgett, 296 S.C. 79, 370 S.E.2d 872, 875-76 & n. 1 (1988). By virtue of Article V, the Clarendon County does not exercise administrative or supervisory authority over any court of the State of South Carolina located within the geographical boundaries of Clarendon County. Consequently, Clarendon County, improperly referred to by Plaintiff as Manning County, should be dismissed from this civil rights action because it was not responsible for the alleged violations of Plaintiff's rights during the relevant times at issue in this case.

## **Recommendation**

Accordingly, it is recommended that the District Court dismiss the Complaint in this case *without prejudice* and without issuance and service of process. *See* Denton v. Hernandez; Neitzke v. Williams; Haines v. Kerner; Brown v. Briscoe, 998 F.2d 201, 202-04 & n. * (4th Cir. 1993); Boyce v. Alizaduh; Todd v. Baskerville, 712 F.2d at 74; *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

---

[6]County courts in the State of South Carolina no longer exist. Section 22 of Article V of the Constitution of the State of South Carolina (1973) allowed "any existing court" on the date of ratification to continue operating until Article V was fully implemented. *See* State ex rel. McLeod v. Civil and Criminal Court of Horry County, 217 S.E.2d at 24 ("The Horry County Court is one of the courts continued in existence solely by virtue of the provisions of Section 22 of Article V.").

Since Plaintiff seeks monetary damages in this case and since many, if not most, of Defendants in this case are immune from suit, 28 U.S.C. § 1915A(b)(2) is applicable in this case. Additionally, several courts have held that a dismissal under Heck constitutes a "strike" under 28 U.S.C. § 1915(e)(2) and (g). *See* Luedtke v. Bertrand, 32 F.Supp.2d 1074 (E.D. Wis.1999); Sandles v. Randa, 945 F. Supp. 169 (E.D. Wis. 1996); *see also* Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998); Grant v. Sotelo, 1998 WL 740826 (N.D. Tex.1998). Hence, I also recommend that this case be deemed a "strike" for purposes of the "three strikes" rule of 28 U.S.C. § 1915(g).

Plaintiff's attention is directed to the important notice on the next page.
Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge


December 7, 2006
Florence, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 2317
Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).